## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOEL MAYORAL,
#B07829,

                       **Plaintiff,**

    v.

ILLINOIS DEPARTMENT OF
CORRECTIONS,
ANDREW WALTER, *ADA Administrator*,
DEANNA BROOKHART, *Warden*,
CHRISTINE BROWN, *ADA Administrator*,
**and**,
PERCY MYERS, *Doctor*.

                   **Defendants.**

Case No. 25-cv-01929-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Joel Mayoral, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional and statutory deprivations that occurred at Pinckneyville Correctional Center ("Pinckneyville"). The Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Page 1 of 11

### THE COMPLAINT[1]

Plaintiff is paraplegic and requires metal leg braces and a walker. (Doc. 1, p. 6). Being paraplegic substantially limits Plaintiff's ability to stand and walk. (*Id.*). Before his transfer to Pinckneyville, Plaintiff was incarcerated at Lawrence Correctional Center ("Lawrence"). (*Id.*). There, he learned that Pinckneyville did not allow inmates to have leg braces because they contained metal supports. (*Id.*). Fearing that he would lose access to his leg braces and walker, Plaintiff had his sister reach out to the IDOC's Americans with Disabilities Act ("ADA") Administrator—Andrew Walter—to explain Plaintiff's situation. (*Id.* at pp. 6-7). On May 3, 2023, Plaintiff's sister tried to call Walter, but he did not answer. (*Id.* at p. 7). Instead, she spoke to another person who promised to relay her message to Walter. (*Id.*).

On May 10, 2023, Nurse Practitioner Wise called Plaintiff to the Lawrence Healthcare Unit. (Doc. 1, p. 7). There, Wise asked if Plaintiff had any health concerns that needed to be addressed before his transfer to Pinckneyville. (*Id.*). Plaintiff explained that he was concerned about his transfer because he did not want his leg braces and walker to be confiscated at Pinckneyville. (*Id.*). Wise assured Plaintiff that she would alert people at the IDOC of his concerns. (*Id.*).

Approximately a month later, Plaintiff was transferred to Pinckneyville, where he lost access to his leg braces and walker. (Doc. 1, p. 8). Plaintiff alleges that, for over a year prior to his transfer, Lawrence was being transitioned from a medium-security to a maximum-security prison and that all medium security inmates had to be transferred elsewhere. (*Id.* at p. 7). Plaintiff claims that because the transition was a lengthy process, that compels the conclusion that Brookhart had

---

[1] Because it appears that Plaintiff is relying on statements made in the Complaint and attached exhibits in asserting his claims, the Court is construing the allegations in all of these pleadings together. *See Otis v. Demarass*, 886 F.3d 639, 644 (7th Cir. 2018); FED. R. CIV. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

ample time to ensure he and other disabled inmates were transferred to prisons that could accommodate their needs. (*Id.*). Plaintiff never had an opportunity to appeal the decision to transfer him to Pinckneyville. (*Id.* at p. 8).

At Pinckneyville, Plaintiff had three interviews with Officer Wala, who acted as an intermediary between Plaintiff and the Pinckneyville Healthcare Unit leaders. (*Id.* at p. 9). During the first two interviews, Plaintiff explained why he needed the leg braces and that he obtained them through a medical permit over a decade ago. (*Id.*). He told Wala that he could walk with his leg braces by "hip-hicking" and was making progress in regaining the mobility he had before he had a hernia surgery. (*Id.*). In addition, Plaintiff told Wala that the braces made it possible for him to perform the following exercises: push-ups, dips, pull-ups, yoga, planks, and other calisthenics. (*Id.*). At the third interview, Wala explained that the leaders of the Healthcare Unit stated that Plaintiff could not have his leg braces because Pinckneyville prohibited inmates from having metal braces. (*Id.*). When Plaintiff asked to speak with the leaders of the Healthcare Unit, Wala responded, "They don't want to talk to you[.]" (*Id.* at p. 10).

On June 9, 2023, Plaintiff, however, had a meeting at the Healthcare Unit with Dr. Myers. (Doc. 1, p. 10). Plaintiff asked Dr. Myers for an exemption so that he could use his leg braces and a walker, explaining the great benefit of added mobility these items provided to Plaintiff. (*Id.*). Plaintiff reiterated that the braces allowed him to perform various exercises, such as push-ups, dips, planks, and yoga. (*Id.*). He added that standing in the braces allowed him to digest his food and have consistent bowel movements. (*Id.*). Dr. Myers understood the situation but told Plaintiff he would refer Plaintiff to a physical therapist instead of allowing access to the braces and walker because of Pinckneyville's security policy. (*Id.*). Plaintiff objected to this course of treatment, stating that physical therapy would not provide him with the same benefits as having his braces and walker. (*Id.*). Dr. Myers stated he would document Plaintiff's request for the braces and

walker. (*Id.*). According to Plaintiff, Dr. Myers made the decision to deny Plaintiff's request without taking Plaintiff's physical condition and needs into account. (*Id.*).

Several weeks later, Plaintiff filed requests slips for the braces to the prison ADA coordinator—Christine Brown. (Doc. 1, p. 11). In his slip to Brown, Plaintiff stated that since his transfer to Pinckneyville, he had been confined to a wheelchair, and he was experiencing lower back pain when standing without his braces. (*Id.* at pp. 18-19). He also sent request slips to Warden Mitchell. (*Id.* at p. 11). Plaintiff received no responses to these requests. (*Id.*). Over the next month Plaintiff sent two more request slips to Brown, but again he did not receive a response. (*Id.*). By August 16, 2023, Plaintiff received his leg braces according to the prison ADA coordinator. (*Id.* at p. 28).

### PRELIMINARY DISMISSALS

Though Plaintiff discusses interactions with Wise, Wala, and Warden Mitchell in his factual allegations, he did not name these individuals as defendants in the case caption, so the Court will not further analyze any potential claims against these individuals. FED. R. CIV. P. 10(a) (the title of the complaint must name all parties).

Plaintiff sues Warden Brookhart for allowing him to be transferred from Lawrence to Pinckneyville without assuring him that his disability needs would be met there. Section 1983 liability hinges on personal participation or involvement in a constitutional deprivation. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). The mere fact that Brookhart was in a supervisory position is insufficient to establish liability considering that, while Brookhart knew of the impending transfer of inmates from Lawrence to Pinckneyville, there are no allegations that she even knew of Plaintiff's need for leg braces and a walker. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("Burks's contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell's*

rule that public employees are responsible for their own misdeeds but not for anyone else's."). Therefore, Plaintiff's claims are dismissed without prejudice against Brookhart.

Additionally, the Court dismisses any claims against Walter. Though Plaintiff alleges that his sister reached out to Walter to explain Plaintiff's disability and the potential loss of his braces, she never spoke to him. A coworker said he would relay the information to Walter. Section 1983 liability requires a showing that each individual defendant had a personal responsibility for the harm alleged. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"). There is no indication in the Complaint that Walter ever learned of Plaintiff's concerns about being transferred to Pinckneyville. The mere allegation that a coworker may have relayed a message to Walter about Plaintiff is not enough to sustain a claim. Thus, Walter will also be dismissed without prejudice for failure to state a claim.

Finally, Plaintiff mentions in passing "due process" concerns that he did not have the opportunity to weigh in on his transfer from Lawrence to Pinckneyville. (Doc. 1, p. 8). He claims that under Administrative Directive 05.05.105 II.G.7, prison officials should have provided him with the opportunity to appeal his transfer to Pinckneyville. (*Id.*). To the extent Plaintiff attempts to raise a due process claim, he fails because a violation of an internal prison policy or even a state statute does not equal a § 1983 claim. *See, e.g., Scott v. Edinburgh,* 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state law or departmental regulations). Plaintiff also has not alleged enough to suggest that his transfer implicated a liberty interest under the Fourteenth Amendment. *See Townsend v. Cooper*, 759 F.3d 678, 685-86 (7th Cir. 2014) (holding "the Fourteenth Amendment provides to inmates a liberty interest in avoiding transfer to more restrictive prison conditions if those conditions result in an 'atypical and significant hardship' when compared to the 'ordinary incidents of prison life.'").

Page 5 of 11

Thus, Plaintiff's due process allegations are dismissed for failure to state a claim.

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of the facts, the Court designates the following counts:

Count 1:     Eighth Amendment deliberate indifference claim against Defendants Myers and Brown for enforcing Pinckneyville's ban of metal leg braces and walkers, causing Plaintiff to suffer a loss of mobility.

Count 2:     ADA/Rehabilitation Act ("RA") claim against IDOC for blocking Plaintiff's access to leg braces and a walker, which he required because of his disability.

Count 3:     Illinois state law claim under the Civil Rights Remedies Restoration Act ("Restoration Act") against IDOC for failing to accommodate Plaintiff's disability when he could not access his leg braces and walker.

Plaintiff seeks compensatory and punitive damages and declaratory relief for these alleged violations. (Doc. 1, p. 12). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (internal quotations omitted). To successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

Liberally construing the allegations in the Complaint, Plaintiff states a colorable claim on

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

screening against Brown and Dr. Myers. As to Brown, Plaintiff contends that Brown did not respond to Plaintiff's request slips about not having access to leg braces and a walker. (Doc. 1, p. 11). Liability may attach if an inmate can demonstrate a prison official received highly detailed correspondence that suggested a serious condition for which adequate steps were not being taken to ensure inmate well-being. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (finding that a plaintiff could proceed on a deliberate indifference claim against officials who received highly detailed grievances and other correspondence and failed to exercise their authority to investigate). Here, Plaintiff sent several requests to Brown detailing his need for leg braces and a walker, but he never received a response from her. These allegations are sufficient on screening to state a claim against Brown because Plaintiff provides the request slips he sent and implies that Brown was ignoring the requests. (*See* Doc. 1, pp. 18-19). For example, he sent Brown a message on July 11, 2023, about his inability to get leg braces because of Pinckneyville's restrictive policy. (*Id.*)

Plaintiff also states a claim against Dr. Myers. Plaintiff states that while at a meeting, Dr. Myers denied his request for braces and a walker but referred Plaintiff to physical therapy instead because of the security policy at Pinckneyville. (Doc. 1, p. 10). Plaintiff's claim can proceed because he alleges that Dr. Myers knew, based on Plaintiff's physical condition, that physical therapy was an ineffective course of treatment. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment."). And Dr. Myers only ordered physical therapy for Plaintiff because of Pinckneyville's ban on metal braces and walkers. Without the braces and walker, Plaintiff was confined to a wheelchair for two months, could not exercise, and suffered back pain.

Therefore, Plaintiff's allegations in Count 1 are sufficient to proceed against Brown and Myers.

**Count 2**

Turning to Count 2, Plaintiff alleges that he sought leg braces and a walker because he was paraplegic. (Doc. 1, pp. 8-11). Under the ADA, "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (*citing* 29 U.S.C. § 705(2)(B)). Discrimination under both statutes includes the failure to accommodate a disability. *Id.* at 672 (citation omitted).

Plaintiff has stated an ADA/RA claim on screening. Here, Plaintiff alleges that being paraplegic qualified him as a person with a disability and that the Defendant failed to accommodate his disability when he was denied access to leg braces and a walker. These allegations support a claim under the ADA and the RA because without these devices Plaintiff lost his mobility for approximately two months, which makes it reasonable to infer he could not participate in numerous prison activities and programs during that time. *See Medina v. Wexford Health Source, et al.*, Case No. 24-1532-SPM, 2024 WL 3251588 (S.D. Ill. July 1, 2024) (allowing the plaintiff's ADA/RA claim to proceed beyond screening for the defendants' failure to accommodate the plaintiff's disability by providing him with a knee brace). Plaintiff states that even with the braces he could only walk by "hip-hicking", he could not exercise without the braces, and he was confined to a wheelchair for approximately two months. (Doc. 1, pp. 9-10). Plaintiff's claim passes the low bar at the screening stage for his ADA/RA claim. But the Court does not make any judgment as to the merits of this claim beyond screening. *See Wagoner v. Lemmon*, 778 F.3d 586, 592-93 (7th Cir.

2015) (upholding a grant of summary judgment against the plaintiff on his ADA/RA claim because his access to some programs and activities was not severely limited, even though he had to crawl off the prison van after medical appointments). As the proper defendant is the agency or an individual in his or her official capacity, Count 2 will proceed against the IDOC and is accordingly dismissed as to all other Defendants. *Jaros*, 684 F.3d at 670 n.2.

### Count 3

Under the Illinois Restoration Act, 775 ILCS 60/1, *et seq.*, a violation of federal discrimination statutes, such as the ADA and the RA, "shall constitute a violation" of the Restoration Act. 775 ILCS 60/15. The Restoration Act permits damages for "past, current, and future monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonmonetary losses, and any amount that may be determined by a jury, or a court sitting without a jury . . . ." 775 ILCS 60/20. Because Plaintiff has set forth a claim under the ADA and the RA at this screening stage, Plaintiff's Restoration Act claim survives screening against the IDOC.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Counts 1, 2,** and **3** of the Complaint (Doc. 1) survive screening. **Count 1** shall proceed against Defendants Brown and Dr. Myers, while **Counts 2** and **3** shall proceed against the IDOC. The Clerk of Court shall **TERMINATE** Defendants Walter and Brookhart for Plaintiff's failure to state a sufficient claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendants Brown, Dr. Myers, and the IDOC: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons

(Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendants' current work address, or, if not known, the Defendants' last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Page 10 of 11

DATED: May 19, 2026

_____
**STEPHEN P. MCGLYNN**
**United States District Judge**